UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BOBBI-JO W.,[1]<br>　　*Plaintiff*,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>　　*Defendant*. | 3:23-cv-1362 (SVN)<br><br><br><br><br><br>November 13, 2024 |

**RULING ON PLAINTIFF'S MOTION TO REVERSE OR REMAND AND DEFENDANT'S MOTION TO AFFIRM DECISION OF COMMISSIONER**

Sarala V. Nagala, United States District Judge.

Plaintiff filed an application for Disability Insurance Benefits under Title II of the Social Security Act, alleging disability beginning January 1, 2017. Plaintiff appeals the decision of an Administrative Law Judge ("ALJ") finding that she was not under a disability at any time from the alleged disability onset date through the date of last insured, December 31, 2017. Plaintiff argues that the ALJ's conclusion that Plaintiff presented no severe impairments is not supported by substantial evidence and that the ALJ erred in his evaluation of opinions from one of Plaintiff's physicians, Dr. Orris. The Commissioner moves for affirmance of the ALJ's decision. For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is DENIED, and the Commissioner's motion to affirm the decision of the Commissioner is GRANTED.

I.　　**BACKGROUND**

The Court will assume the parties' familiarity with Plaintiff's medical history, as summarized in her statement of facts, ECF No. 15-1, which the Commissioner adopts and

---

[1] In opinions issued in cases filed pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in order to protect the privacy interest of social security litigants while maintaining public access to judicial records, this Court will identify and reference any non-government party solely by first name and last initial. *See* Standing Order – Social Security Cases (D. Conn. Jan. 8, 2021).

supplements, ECF No. 18-1, and which the Court adopts and incorporates by reference. The Court will also assume familiarity with the five sequential steps used in the analysis of disability claims, the ALJ's opinion, and the record. The Court will only cite portions of the record and the legal standards necessary to explain its decision.

## II.     STANDARD OF REVIEW

It is well-settled that a district court will reverse the decision of the Commissioner as to whether a claimant is disabled only when it is based upon legal error or when it is not supported by substantial evidence in the record. *See, e.g.*, *Greek v. Colvin*, 802 F.3d 370, 374–75 (2d Cir. 2015) (*per curiam*); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).

"In determining whether the agency's findings were supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013) (*per curiam*) (internal quotation marks and citation omitted). Under this standard of review, "absent an error of law, a court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the court might have ruled differently." *Campbell v. Astrue*, 596 F. Supp. 2d 446, 448 (D. Conn. 2009). The court must therefore "defer to the Commissioner's resolution of conflicting evidence," *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012), and reject the Commissioner's findings of fact only "if a reasonable factfinder would *have to conclude otherwise*," *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d

Cir. 2012) (emphasis in original).  Stated simply, "[i]f there is substantial evidence to support the [Commissioner's] determination, it must be upheld." *Selian*, 708 F.3d at 417.

### III. DISCUSSION

The Court holds that the ALJ's determination that Plaintiff was not under a disability at any time from the alleged onset date (January 1, 2017) through the date of last insured (December 31, 2017) is supported by substantial evidence and that the ALJ did not err in his evaluation of Dr. Orris's opinion.

    A. <u>Substantial Evidence Supports the ALJ's Findings</u>

First, substantial evidence supports the ALJ's finding that Plaintiff was not under a disability during the relevant timeframe.

To begin, Plaintiff has waived any argument that the ALJ should have found her conditions of asthma, hypothyroidism, unilateral retinitis pigmentosa, and gastrointestinal complaints were severe impairments.  While Plaintiff generally asserts that the ALJ "erred in his evaluation of severity at Step Two of the sequential evaluation of process for determining disability, leaving the finding of no severe impairments without the support of substantial evidence," Plaintiff does not specifically challenge these findings by the ALJ.  Pl.'s Br., ECF No. 15-1 at 1, 6.  Defendant argues that Plaintiff has thus waived the issue, and the Court agrees.  *See Vilardi v. Astrue*, 447 F. App'x 271, 272 n.2 (2d Cir. 2012) (summary order) (holding that issues not raised on appeal are deemed waived).

But even if Plaintiff did not waive the issue, the ALJ's findings are supported by substantial evidence.  Indeed, the ALJ's conclusions that Plaintiff's conditions of asthma, hypothyroidism, unilateral retinitis pigmentosa, and gastrointestinal complaints were medically determinable impairments but were not severe are each supported by specific findings for each condition based

on the record. *See* Tr., ECF No. 10, at 25–27. Specifically, in assessing each condition as nonsevere, the ALJ found that Plaintiff's asthma condition was assessed as "mild, intermittent, and uncomplicated," and was "well controlled" during the relevant period; that Plaintiff's hypothyroidism was treated "without any noted complaints or complications"; that Plaintiff's retinitis pigmentosa left her with "considerable retinal function"; and that the medical evidence concerning Plaintiff's gastrointestinal complaints "supports a finding that [Plaintiff's gastrointestinal condition] does not significantly limit her basic work activities." Tr. at 25. These findings are all based on "more than a mere scintilla" of evidence, *Talavera*, 697 F.3d at 151, which Plaintiff does not endeavor to specifically challenge.

Next, the ALJ's finding of a nonsevere cervical impairment was also supported by substantial evidence. In making this determination, the ALJ considered a wide variety of evidence dating from 2016 through 2018, including MRI and X-ray imaging, physical examination results, and symptom and activity reports from Plaintiff. Tr. 24–25. On appeal, Plaintiff attempts to undermine the ALJ's analysis by pointing to two emergency room treatments for neck pain and an opinion by Dr. Orris indicating that she had clinical findings of neck pain, with decreased range of motion. Pl.'s Br. at 7–8. But the ALJ sufficiently addressed these arguments in his decision. Regarding the first emergency room visit, on December 30, 2017, the ALJ noted that on physical examination, the claimant appeared well, in no acute distress, and that the neck was supple and range of motion was full but painful. Tr. at 24. The ALJ also noted that Plaintiff sought treatment in the emergency room only because she happened to be at the hospital with a family member when she decided to be evaluated and that she would not otherwise have sought treatment. *Id.* Regarding the second emergency room visit on February 16, 2018, the ALJ noted the findings of the physical examination and X-rays. Tr. at 25. The ALJ then concluded that repeat imaging and

4

physical examinations were consistent with a nonsevere cervical impairment. *Id.* As discussed below, the ALJ properly evaluated Dr. Orris's opinions relating to the condition of Plaintiff's cervical spine. Accordingly, with respect to the ALJ's conclusion on this issue, Plaintiff does not adequately show—and the Court, upon review of the record, cannot independently find—that a reasonable fact finder would "have to conclude otherwise." *Brault*, 683 F.3d at 448 (emphasis removed).

The ALJ's finding that Plaintiff's alleged rheumatoid arthritis was not medically determinable was also supported by substantial evidence. The ALJ noted that, while Plaintiff was "in the process of being worked up for autoimmune issues, she had not been diagnosed with anything specific and had a positive test for ANA in February 2021, long after the date of last insured." Tr. at 26. Plaintiff counters that "it is not unexpected that the identification of Plaintiff's rheumatoid arthritis would be delayed and not swiftly identified in the year that it became disabling." Pl.'s Br. at 10. But this argument misses the mark: the ALJ concluded that there were no indications in the record of medically determinable rheumatoid arthritis during the relevant period in 2017, and Plaintiff fails to specifically tie post-2017 diagnoses or test results to the relevant time period. Thus, Plaintiff's related argument that she was ultimately diagnosed with Sicca syndrome and Sjogren's syndrome with keratoconjunctivitis[2] in 2021 fails for the same reason, as the record does not indicate how this diagnosis relates to Plaintiff's medical condition in 2017. *See id.* at 7; Tr. at 980, 995, 1086. Accordingly, the ALJ's conclusion that Plaintiff's

---

[2] "Primary Sjogren syndrome is a systemic autoimmune disorder commonly presenting with dryness involving the eyes and mouth due to inflammation and resultant pathology of the lacrimal and salivary glands. Up to one-half of affected individuals also develop extra-glandular involvement in organs such as the joints, skin, lungs, gastrointestinal (GI) tract, nervous system, and kidneys. This condition is frequently associated with other autoimmune disorders including rheumatoid arthritis (RA) and systemic lupus erythematosus (SLE)." Steven E. Carsons and Bhupendra C. Patel, "Sjorgen Syndrome," https://perma.cc/3MSX-APFT (last updated July 31, 2023).

alleged rheumatoid arthritis was not medically determinable during the relevant period was supported by substantial evidence.

The ALJ's finding that Plaintiff's back impairment was not medically determinable was also supported by substantial evidence. In describing the objective evidence regarding Plaintiff's back condition, the ALJ noted that Plaintiff was prescribed hydrocodone-acetaminophen to be used as needed for back pain, that Plaintiff was noted to have back exercises, and that there was no evaluation or imaging of the lumbar spine and no noted abnormalities on physical examinations during the relevant period. Tr. at 26. The ALJ thus noted that Plaintiff's statements about the intensity, persistence, and limiting effects of her back symptoms were inconsistent with the objective evidence in the record and that her level of care and responses to treatment are consistent with nonsevere impairment. *Id*.

On appeal, Plaintiff impliedly challenges the ALJ's finding by arguing that she presented evidence that she was prescribed Vicodin for back pain and that the record contains a clinical finding of bilateral lumbar paraspinous muscle tenderness. Pl.'s Br. at 7. But the ALJ acknowledged Plaintiff's hydrocodone-acetaminophen prescription, and Plaintiff fails to explain how a finding of bilateral lumbar paraspinous muscle tenderness constitutes an impairment, especially in light of contemporaneous notes of Plaintiff's negative straight leg raise testing, normal posture, and normal gait, and notes indicating that her low back pain only "flared up from standing and painting for prolonged hours," after Plaintiff had been "painting her house for 5 days." Tr. at 26, 765–766. Plaintiff's other counterarguments that rely on Dr. Orris's opinions are addressed below.

Additionally, the ALJ's finding that Plaintiff's mental impairment was nonsevere was supported by substantial evidence. Again, Plaintiff does not specifically challenge the ALJ's step

6

two finding on this issue. While Plaintiff has been prescribed medication for anxiety since at least January 2016, the ALJ noted that the record did not contain any complete mental status examinations during 2017. Tr. at 25. Moreover, the ALJ noted that Plaintiff was described as "alert, fully oriented, cooperative, well groomed, and in no acute distress." *Id.* at 26. Further, the ALJ specifically considered Plaintiff's claim in light of the four broad areas of mental functioning work pursuant to 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00, and found that Plaintiff had no limitation. *Id.* at 27–28. The ALJ concluded that Plaintiff's mental impairment, while medically determinable, did not indicate more than a "minimal limitation" in the Claimant's ability to do basic work activities, *id.* at 28, and Plaintiff offers no argument specifically challenging this conclusion.

Finally, Plaintiff's argument that the ALJ failed to defer to State Agency consultants' determinations of severe impairments is to no avail. Pl.'s Br. at 7. ALJs are charged by regulation to "consider prior administrative medical findings and medical evidence from our Federal or State agency medical or psychological consultants" but "are not required to adopt any prior administrative medical findings." 20 C.F.R. § 404.1513a(b)(1). Here, the ALJ noted that the State Agency consultants did not prepare a residual functional capacity assessment or mental residual functional capacity assessment, as they found insufficient evidence to do so. Tr. at 26. While State Agency Consultant Dr. Shibuya found severe impairments of "other and unspecified arthropathies," disorders of the skeletal spine, and low vision, and State Agency Consultant Dr. Bennett found severe impairments of the skeletal spine, both consultants ultimately did not find sufficient evidence to issue a residual functional capacity assessment. Plaintiff fails to articulate how this ultimate conclusion of the consultants undermines the conclusion the ALJ reached. Tr. at 26, 62–63, 68–69. Moreover, throughout his decision, the ALJ addresses portions of the record

that are inconsistent with the severe medical impairments Plaintiff identified. Tr. at 23–28. Accordingly, the ALJ's treatment of opinions from State Agency physicians was proper.

### B. The ALJ Properly Evaluated Dr. Orris's Opinions

Second, the ALJ properly weighed the opinions provided by Dr. Orris, contrary to Plaintiff's arguments. Plaintiff argues that the ALJ was required to identify evidence explicitly rebutting Dr. Orris's opinions before finding the opinions unpersuasive. Pl.'s Br. at 8. But the ALJ was under no such requirement. Instead, a physician's opinion may be found unpersuasive in light of the physician's own findings or other evidence in the record. 20 C.F.R. § 404.1520c. Here, the ALJ did just that: prior to evaluating Dr. Orris's opinion, the ALJ noted medical evidence from other sources that undermined Dr. Orris's statements.

The ALJ noted that on December 16, 2021, Dr. Orris completed a physical residual functional capacity form in which he stated that Plaintiff was diagnosed with Sjogren's, osteoarthritis, degenerative joint disease, and rheumatoid arthritis. Tr. at 27. The ALJ then found that Dr. Orris's opinion was unpersuasive because it was inconsistent with contemporaneously made medical records and, specifically, that the limitations Dr. Orris assessed were not consistent with Plaintiff's physical examinations and level of care in 2017. *Id.*

Similarly, the ALJ called into question a January 25, 2022, letter by Dr. Orris. *Id.* The ALJ noted that in that letter Dr. Orris stated that Plaintiff has had problems with back pain, neck pain, and joint pain dating back to 2013 and that her back pain, specifically, has hindered her ability to work since January 1, 2017. *Id.* The ALJ then concluded that Plaintiff's physical findings, imaging studies, and level of care, are not consistent with a finding, such as Dr. Orris's, of impairments precluding work. *Id.*

The ALJ's conclusions comport with 20 C.F.R. § 404.1520c's framework of how to analyze medical opinions. Namely, the ALJ analyzed both the supportability and the consistency of Dr. Orris's statements in light of other evidence on the record, including physical examinations and Plaintiff's level of care. The ALJ's evaluation is not cursory or too general, as Plaintiff argues. Pl.'s Br. at 9. To the contrary, the ALJ's conclusions, especially in the context of the ALJ's preceding findings, are rooted in analysis of Plaintiff's medical history. Moreover, the ALJ explains not only what his conclusion is, but how the conclusion was reached—by the identification of contrary evidence in the record. Tr. at 27. Accordingly, the Court concludes that the ALJ "explain[ed] how [he] considered the supportability and consistency factors" in evaluating Dr. Orris's opinions. 20 C.F.R. § 404.1520c(b)(2). Indeed, the Court's conclusion on this issue is in line with its prerogative to "defer to the Commissioner's resolution of conflicting evidence." *Cage*, 692 F.3d at 122.

## IV.     CONCLUSION

For the reasons described herein, Plaintiff's motion to reverse or remand is DENIED and Defendant's motion to affirm the Commissioner's decision is GRANTED.

The Clerk of Court is directed to enter judgment for Defendant and close the case.

**SO ORDERED** at Hartford, Connecticut, this 13th day of November, 2024.

                                        /s/ Sarala V. Nagala
                                        SARALA V. NAGALA
                                        UNITED STATES DISTRICT JUDGE